# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

CAROL LIPSON,

        Plaintiff,

    v.

METRO CORP. HOLDINGS, INC.,
and DAVID H. LIPSON, JR.,
SHERRY LITWER, DEBRA
CLAREMON, and BARTON WINOKUR
as Co-Executors of the ESTATE
OF D. HERBERT LIPSON, and THE
ESTATE OF D. HERBERT LIPSON,

        Defendants.

1:18-cv-15621-NLH-AMD

**OPINION**

---

**APPEARANCES:**

JOSHUA BENJAMIN KAPLAN
MATTHEW ADAM GREEN
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
1120 ROUTE 73
SUITE 420
MT. LAUREL, NJ 08054

    *On behalf of Plaintiff*

KERRI E. CHEWNING
ARCHER & GREINER, PC
ONE CENTENNIAL SQUARE
PO BOX 3000
HADDONFIELD, NJ 08033-0968

FRANK P. TRAPANI,
KREHER & TRAPANI LLP
1325 SPRUCE STREET
PHILADELPHIA, PA 19107

    *On behalf of Defendants*

**HILLMAN, District Judge**

Presently before the Court is Plaintiff's motion to remand the matter to state court.  Also pending is Defendant Metro Corp. Holdings, Inc.'s motion to dismiss for lack of personal jurisdiction.  As set forth below, Plaintiff's motion will be granted, and Defendant's motion will be denied as moot.

**BACKGROUND**

On October 4, 2018, Plaintiff, Carol Lipson filed a complaint in New Jersey Superior Court, Atlantic County, against Defendants Metro Corp. Holdings, Inc., the Estate of D. Herbert Lipson ("Herb Lipson"), and the four co-executors of Herbert Lipson's estate.  Plaintiff was Herb Lipson's spouse, Metro Corp. was Herb Lipson's company, and three of the four co-executors of Herb Lipson's estate are his children from a prior marriage.

On November 2, 2018, Metro Corp. removed the action to this Court pursuant to 28 U.S.C. § 1441(b) based on diversity of citizenship under 28 U.S.C. § 1332(a)(1).  Plaintiff is a citizen of New Jersey.  Defendant Metro Corp. is a citizen of Pennsylvania.  The other five Defendants are citizens of New Jersey.[1]

---

[1] "[T]legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent."

Despite the lack of diversity between Plaintiff and five of the Defendants, Metro Corp. removed the action on the premise that the New Jersey citizenship of those Defendants must be disregarded because they were not properly joined as parties. Metro Corp. evokes the "fraudulent misjoinder" doctrine and argues that the joinder of Plaintiff's claims against Metro Corp. with Plaintiff's claims against the other Defendants was "egregious." Metro Corp. argues that Plaintiff's claims against the New Jersey Defendants must be severed and remanded. Metro Corp. further argues that Plaintiff's remaining case against Metro Corp. must be dismissed for lack of personal jurisdiction.

Plaintiff contests Metro Corp.'s position that the five Defendants are not properly joined, or that they were "fraudulently misjoined." Plaintiff argues that the fraudulent misjoinder doctrine is not recognized in this District, and because Metro Corp. improperly removed her case from New Jersey state court, her chosen forum, she is entitled to attorney's fees and costs related to Metro Corp.'s improvident removal. Plaintiff further contests Metro Corp.'s lack of personal jurisdiction argument.

---

28 U.S.C. § 1332(c)(2); see also Golden v. Golden, 382 F.3d 348, 352 n.1 (3d Cir. 2004) ("In diversity actions involving estates, the courts look to the citizenship of the decedent to determine jurisdiction."). Herb Lipson was a citizen of New Jersey.

## DISCUSSION

The removal statute provides, "A civil action otherwise
removable solely on the basis of the jurisdiction under section
1332(a) of this title may not be removed if any of the parties
in interest properly joined and served as defendants is a
citizen of the State in which such action is brought."  28
U.S.C. § 1441(b)(2).  The removal statutes "are to be strictly
construed against removal and all doubts should be resolved in
favor of remand," and "a party who urges jurisdiction on a
federal court bears the burden of proving that jurisdiction
exists."  Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d
Cir. 1990) (citation omitted).  Moreover, a removing party who
charges that a plaintiff has fraudulently joined a party to
destroy diversity of jurisdiction has a heavy burden of
persuasion.  Id. (citation omitted).

Under the well-established fraudulent joinder doctrine,
joinder is fraudulent "where there is no reasonable basis in
fact or colorable ground supporting the claim against the joined
defendant, or no real intention in good faith to prosecute the
action against the defendant or seek a joint judgment."  Id.
(citation omitted).  A district court must resolve all contested
issues of substantive fact in favor of the plaintiff and must
resolve any uncertainties as to the current state of controlling

4

substantive law in favor of the plaintiff. Id. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Id. (citation omitted).

Under the more novel fraudulent misjoinder doctrine,[2]

---

[2] A recent case has summarized the fraudulent misjoinder doctrine, as well as its status in this District.

> Fraudulent misjoinder, otherwise known as "procedural misjoinder," refers to a situation where a plaintiff attempts to frustrate a defendant's right to remove by joining a non-diverse party in violation of the applicable joinder rule. While fraudulent joinder tests the viability of the claims against the defendant, fraudulent misjoinder tests the procedural basis of a party's joinder. When the doctrine of fraudulent misjoinder is recognized, it may operate as an exception to the complete diversity rule. Joinder is considered egregious when there is no real connection between each plaintiffs' underlying claims. . . .
> The Third Circuit has not addressed the doctrine of fraudulent misjoinder. Instead, courts are split within the District of New Jersey as to the doctrine's applicability. Compare Vanny v. Bristol-Myers Squibb Co. (In re Plavix Prod. Liab. & Mktg. Litig.), No. MDL No. 3:13-2418, 2014 U.S. Dist. LEXIS 142910, at *638, 2014 WL 4954654 (D.N.J. Oct. 1, 2014) (declining to apply the doctrine of fraudulent misjoinder absent any direction from the Third Circuit, highlighting the unresolved issue of whether Federal Civil Procedure Rule 20 applied in analyzing the joinder of the parties, or if the forum state's joinder rule would apply) with Welsh v. Merck Sharpe & Dohme Corp. (In re Fosamax Prods. Liab. Litig.), No. 2243, 2012 U.S. Dist. LEXIS 48114, at *19 (D.N.J. Apr. 2, 2012) (applying the doctrine of fraudulent misjoinder, noting it was

Federal Civil Procedure Rule 20 is invoked,[3] and a two-step

analysis employed.

Rule 20(b) provides:

Persons . . . may be joined in one action as defendants if:

(A) any right to relief is asserted against them jointly,
severally, or in the alternative with respect to or arising
out of the same transaction, occurrence, or series of
transactions or occurrences; and

(B) any question of law or fact common to all defendants
will arise in the action.

Fed. R. Civ. P. 20(b).

For the two-step analysis, a court must (1) determine

whether the claims were misjoined under Fed. R. Civ. P. 20, and

then (2) determine whether the joinder was egregious. Breitner

v. Merck & Co., Inc., 2019 WL 316026, at *3 (D.N.J. 2019)

(citing Welsh v. Merck Sharpe & Dohme Corp. (In re Fosamax

Prods. Liab. Litig.), No. 2243, 2012 U.S. Dist. LEXIS 48114, at

---

"particularly relevant to large pharmaceutical product
liability actions").

Breitner v. Merck & Co., Inc., 2019 WL 316026, at *2–3 (D.N.J.
2019) (other quotations and citations omitted).

[3] As Brietner noted, 2019 WL 316026, at *3, it is not clear
whether, under a fraudulent misjoinder analysis, a court should
apply the Federal Rule of Civil Procedure permissive joinder
rules (Fed. R. Civ. P. 20), or the New Jersey State Court civil
procedure rules for permissive joinder (N.J. Ct. R. 4:29), but
the Federal and New Jersey rules are substantially similar.

*19 (D.N.J. 2012)).[4]

---

[4] The fraudulent misjoinder doctrine was first articulated by the Eleventh Circuit in <u>Tapscott v. MS Dealer Serv. Corp.</u>, 77 F.3d 1353 (11th Cir. 1996). In <u>Tapscott</u>, the Eleventh Circuit acknowledged that improper joinder can operate to defeat a defendant's right to remove, but noted that the misjoinder must be "egregious" in order to rise to the level of being fraudulent. <u>In re Plavix Product Liability and Marketing Litigation</u>, 2014 WL 4544089, at *5 (D.N.J. 2014) (citing <u>Tapscott</u>, 77 F.3d at 1360). Part of what made the misjoinder in Tapscott "egregious" was that there was "no real connection" between the underlying facts of the claims. <u>Id.</u> (citing <u>Triggs v. John Crump Toyota, Inc.</u>, 154 F.3d 1284, 1289 (11th Cir. 1998)). Metro Corp. agues that courts are split as to whether a showing of egregiousness is required, and argues that the better approach does not include such a requirement. Metro Corp. cites out-of-circuit cases for its position. (Docket No. 10 at 23.) Even though the Court questions the applicability of the fraudulent misjoinder doctrine in this District, at a minimum, the Court will look to in-District law for persuasive authority on the standard for fraudulent misjoinder doctrine, and those cases require a showing that the joinder was egregious. <u>See</u> cases cited *infra*. Moreover, without the "egregious" element, the Court questions how the fraudulent misjoinder doctrine is effectively any different from the fraudulent joinder doctrine. See, e.g., <u>Blackman & Co., Inc. v. GE Business Financial Services, Inc.</u>, 2016 WL 1702043, at *6 (D.N.J. 2016) ("The use of term 'fraudulent' in the joinder context is usually a misnomer in that it implies that a party has committed fraud. The term 'fraudulent joinder' does not 'require a showing of fraud in the conventional sense; it in no way reflects on the integrity of plaintiff or of plaintiff's counsel.'" (quoting <u>Am. Dredging Co. v. Atl. Sea Con, Ltd.</u>, 637 F. Supp. 179, 183 (D.N.J. 1986) (citation omitted) ("The standard for determining whether the joinder is fraudulent has been articulated by Professor Moore in the following manner: The joinder may be fraudulent if the plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state. If, however, there is a real possibility that the plaintiff has stated a cause of action, the joinder is not fraudulent, and the cause should be remanded.")).

The difference between fraudulent joinder and fraudulent misjoinder has been explained as follows:

> While fraudulent joinder tests the viability of the claims against the defendant, fraudulent misjoinder tests the procedural basis of a party's joinder. <u>See</u> <u>Asher v. Minn. Mining & Mfg. Co.</u>, No. 04-522, 2005 WL 1593941, at *4 (E.D. Ky. June 30, 2005) (stating that fraudulent joinder addresses whether plaintiffs' "joined claims are unrelated and have been improperly joined to destroy diversity"); <u>see also</u> <u>Geffen v. Gen. Elec. Co.</u>, 575 F. Supp. 2d 865, 869 (N.D. Ohio 2008) ("[W]ith fraudulent misjoinder, the charge is that the joined claims are unrelated and have been improperly joined in one action to destroy diversity.").

<u>In Re Plavix Product Liability and Marketing Litigation</u>, 2014 WL 4954654, at *10 (D.N.J. 2014).

The Court finds that under either the fraudulent joinder doctrine[5] or the fraudulent misjoinder doctrine,[6] Plaintiff's

---

[5] Metro Corp. does not base its removal on the fraudulent joinder doctrine, but the Court finds that Metro Corp.'s presence in Plaintiff's case does not violate that doctrine, which is a well-established doctrine in the Third Circuit, and which addresses a similar issue as the fraudulent misjoinder doctrine – namely, the addition of parties solely for the purpose of defeating removal to federal court.

[6] Although this Court does not definitively determine the viability of the fraudulent misjoinder doctrine as an available basis upon which to remove a complaint from state court, this Court echoes the observations made by Judge Wolfson in considering a removal based on fraudulent misjoinder:

> [T]here are considerable reasons against adopting the fraudulent misjoinder doctrine. Conducting fraudulent misjoinder analysis in this case necessarily requires the Court to wade into a thorny thicket of unsettled law; indeed, disagreements exist as to numerous questions about the doctrine, and "the last thing the federal courts need

case must be remanded.  Plaintiff reasonably joined all

Defendants to the action, and the Court cannot find that

Plaintiff's joinder of Metro Corp. with the five New Jersey

Defendants was "egregious."

   The Court bases this finding on the content of Plaintiff's

complaint.  (Docket No. 1 at 12-94.)  In her complaint,

Plaintiff relates that she was married to D. Herbert Lipson

("Herb Lipson") from 1997 until his death on December 25, 2017.

Herb Lipson was the chairman of Metro Corp.  Plaintiff claims

that Metro Corp. is now controlled by Herb Lipson's adult

children from a prior marriage - David H. Lipson, Sherry Litwer,

and Debra Claremon - and the three adult children are the

Defendant co-executors of his estate, along with Defendant co-

---

        is more procedural complexity."  In fact, these unresolved
        issues have raised significant doubt in the context of
        remand.  Absent a Third Circuit directive, this Court
        declines to adopt the fraudulent misjoinder doctrine.  As a
        matter of policy, this approach is prudent in light of the
        Third Circuit's well-settled principle that the removal
        statutes should be strictly construed, and all doubts
        regarding the propriety of removal are to be resolved in
        favor of remand.  Moreover, "creating a new doctrine having
        the effect of expanding the removability of state court
        cases that, on their face, do not fall within the limited
        jurisdiction of the federal courts is neither wise nor
        warranted."  Indeed, doing so would contravene the circuit
        court's instruction to narrowly construe the removal
        statutes. . . .

In Re Plavix Product Liability and Marketing Litigation, 2014 WL
4954654, at *13-14 (D.N.J. 2014) (citations omitted).

executor Baron J. Winokur.[7]

Plaintiff claims that on June 22, 1997, Herb Lipson and Metro Corp. entered into a Death Benefit Agreement ("DBA"), which provided that Metro Corp. would, among other things, pay Plaintiff $1 million upon Herb Lipson's death, payable in 60 equal consecutive monthly installments of $16,667.00, and provide Plaintiff with health insurance coverage. Plaintiff claims that Metro Corp.'s obligation under the DBA commenced on January 1, 2018, but Metro Corp. has failed to pay Plaintiff according to the DBA,[8] or continue to provide her with health insurance.[9]

Plaintiff claims that Herb Lipson's will directs that co-executors are "to perform any and all obligations not satisfied by provisions outside my will to which I or my estate is legally bound pursuant to my pre-nuptial agreement with my wife Carol,

---

[7] The complaint provides that Winokur is an attorney at Dechert LLP.

[8] The DBA also provided that Herb Lipson's long-time assistant would receive death benefits totaling $25,000 to be paid in four equal installments. Plaintiff believes that Metro Corp. has paid or is paying that obligation.

[9] Plaintiff claims that because Metro Corp.'s failure to honor its obligation to provide her with health insurance coverage, Plaintiff has had to pay for COBRA and $636.28 per month in Medicare premiums.

which agreement was amended by us on October 7, 2008." The original Prenuptial Agreement was dated June 17, 1997, and modified on October 7, 2008.

The Modification provides that Plaintiff is the beneficiary of Herb Lipson's salary continuation plan with Metro Corp., and if one is not in effect at his death, his Estate shall pay $600,000 to Plaintiff. At the time of Herb Lipson's death, he did not have a salary continuation plan in effect with Metro Corp., and the Estate is required to pay Plaintiff $600,000. Plaintiff claims that the co-executors of the estate have failed to fulfill their obligation under the Prenuptial Agreement (the original and Modification) and Herb Lipson's will.

Plaintiff has asserted claims for breach of contract, and unjust enrichment in the alternative, against Metro Corp. for its failure to abide by the DBA. Plaintiff has asserted claims for breach of contract, and unjust enrichment in the alternative, against the Estate for breach of the Prenuptial Agreement. Plaintiff has asserted a claim against the four co-executors for breach of fiduciary duty.

Metro Corp. argues that it is obvious that Plaintiff's claims against it are separate and distinct from her claims against the other Defendants. Metro Corp. contends that Plaintiff is suing a business entity for breach of contract

11

between Metro Corp. and Herb Lipson to which she claims to be a third-party beneficiary, which contract is wholly unrelated to Herb Lipson's estate, the actions of his co-executors, and her Prenuptial Agreement with Herb Lipson. In short, Metro Corp. argues that Plaintiff is pursuing two distinct contract claims based on two different contracts against two distinct set of defendants with no logical relationship to each other or factual overlap. Therefore, Metro Corp. argues that Plaintiff's joinder of Metro Corp. to the action against the non-diverse parties, rather than instituting a separate action against it, was simply an egregious attempt to avoid federal court.

Plaintiff argues that not only is the fraudulent misjoinder doctrine not a proper mechanism in this District by which to remove a case from state court to federal court, all her claims arise from the same series of transactions and occurrences, and the parties, claims, witnesses, and relevant facts are common and intertwined. Plaintiff further argues that her complaint advanced against Metro Corp. and the other Defendants is proper because it would be an affront to judicial efficiency to have two cases proceed simultaneously when there is such identity of issues, facts, parties, and witnesses. Plaintiff contends that it is not she who has acted egregiously, but it is Metro Corp. who unreasonably removed Plaintiff's case based on an

inapplicable doctrine, and Metro Corp. should be required to pay her fees and costs she has incurred as a result.

The Court agrees with Plaintiff that she did not fraudulently misjoin Metro Corp. to her action. Even though Plaintiff has advanced a breach of contract claim against Metro Corp. under the DBA, and a separate breach of contract and breach of fiduciary duty claim against the other defendants under the Prenuptial Agreement, those claims as pleaded by Plaintiff are not as separate and distinct as Metro Corp. views them.

As Plaintiff avers in her complaint, Metro Corp. is being run by Herb Lipson's adult children, who are also the co-executors of Herb Lipson's estate. A corporation is "regarded in law as an entity distinct from its individual officers, directors, and agents," but "a corporation is an artificial entity that lacks the ability to function except through the actions of its officers, directors, agents, and servants." Vosough v. Kierce, 97 A.3d 1150, 1159 (N.J. Super. Ct. App. Div. 2014) (quoting Printing Mart–Morristown v. Sharp Elec. Corp., 563 A.2d 31 (N.J. 1989)); see also Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 166 (2001) ("[A] corporation acts through its employees.").

Thus, even though Metro Corp. is the party to the DBA and

it, rather than its officers, directors, and agents, could be
held liable for that breach, Metro Corp.'s alleged breach was,
or is being, perpetrated by its officers, directors, or agents,
who are Herb Lipson's children and co-executor's of Herb
Lipson's estate.  Based on the allegations in Plaintiff's
complaint, it is plausible that one or more of Herb Lipson's
children are involved with Metro Corp.'s alleged breach of the
DBA, in addition to their alleged breach of their obligations
under Herb Lipson's will and Prenuptial Agreement.  This
interfamilial dispute cannot be compartmentalized into two
separate actions.

Indeed, had Plaintiff proceeded in the manner argued by
Metro Corp., she most likely would have run afoul of New
Jersey's entire controversy doctrine.  See Crispin v.
Volkswagenwerk, A.G., 476 A.2d 250, 256–57 (N.J. 1984)
(explaining that "New Jersey has long held a strong commitment
to the [entire controversy] doctrine and its goals of judicial
economy and fairness to the parties" based on the "urgent need
for eliminating the delay and wastage incident to the
fragmentation of litigation [which] dictate[s] that all of the
aspects of the plaintiff's controversy with the defendant be
included within his legal proceeding" (citations omitted));
Sanchez v. Select Portfolio Servicing, Inc., 2017 WL 4711475, at

14

*4 (D.N.J. 2017) ("Like traditional res judicata, the entire
controversy doctrine is intended to prevent piecemeal litigation
by requiring the assertion of all claims arising from a single
controversy in one action," and that "a party cannot withhold
part of a controversy for later litigation even when the
withheld component is a separate and independently cognizable
cause of action." "In applying the doctrine, the central
consideration is whether the claims ... arise from related facts
or the same transaction or series of transactions." (citing
DiTrolio v. Antiles, 662 A.2d 494, 502 (N.J. 1995) (other
citations omitted)).

It is clear, therefore, that Plaintiff's joinder of Metro
Corp. in her suit concerning alleged benefits owed to her under
Herb Lipson's agreement with his company, their Prenuptial
Agreement, and his will was far from "egregious." See, e.g.,
Williamson v. Daiichi Sankyo, Inc., 2017 WL 435301, at *1
(D.N.J. 2017) (citations omitted) ("Regarding the fraudulent
misjoinder argument, the Third Circuit does not recognize a
cause of action under this doctrine. Even in the absence of a
definitive promulgation by the Third Circuit, the Eastern
District of Pennsylvania has nonetheless applied the fraudulent
misjoinder doctrine in a pharmaceutical case. This doctrine,
however, was relied on solely because of special circumstances,

15

namely, egregious conduct by plaintiffs. Since defendants have neither argued nor demonstrated plaintiffs' egregious conduct, this court finds no basis within the facts presented here to expand beyond Third Circuit jurisprudence and consider a fraudulent misjoinder analysis."); <u>Belmont Condominium Ass'n, Inc. v. Arrowpoint Capital Corp.</u>, 2011 WL 6721775, at *8 (D.N.J. 2011) ("Although the state court may later find that Commerce was improperly joined, the Court at this stage finds only that Commerce was not egregiously misjoined."); <u>cf</u>., <u>Breitner</u>, 2019 WL 316026, at *4 (D.N.J. 2019) (finding the joinder of five plaintiffs was egregious because the complaint "was structured in a way to defeat diversity jurisdiction" since out of eighty-nine plaintiffs, only five had the same citizenship as the defendants).

Consequently, the Court lacks subject matter jurisdiction over the action,[10] and it must be returned to New Jersey state court.[11] The New Jersey state court is well-equipped to

---

[10] The Court properly exercises jurisdiction to determine the scope of its subject matter jurisdiction. <u>Employers Ins. of Wausau v. Crown Cork & Seal Co., Inc.</u>, 905 F.2d 42, 45 (3d Cir. 1990).

[11] The New Jersey state court was capable in the first instance to interpret its rules of procedure to determine whether Metro Corp. was improperly joined. However, even though this Court has considered the propriety of Metro Corp.'s joinder in the determination of whether removal was proper under the fraudulent

determine whether it has personal jurisdiction over Metro Corp.[12]

---

misjoinder doctrine and whether this Court has subject matter jurisdiction over the case, one may question whether the state court is now permitted on remand to re-address the issue under state law and its rules of procedure. See Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 376 (1940) ("The lower federal courts are all courts of limited jurisdiction, that is, with only the jurisdiction which Congress has prescribed. But none the less they are courts with authority, when parties are brought before them in accordance with the requirements of due process, to determine whether or not they have jurisdiction to entertain the cause and for this purpose to construe and apply the statute under which they are asked to act. Their determinations of such questions, while open to direct review, may not be assailed collaterally."); Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585 (1999) ("Issue preclusion in subsequent state-court litigation [] may also attend a federal court's subject-matter determination."); but see In re Vicinage 13 of New Jersey Superior Court, 185 A.3d 895, 900 (N.J. Super. Ct. App. Div. 2018) (rejecting the defendant's argument that the federal district court judge's assessment of issues related to the propriety of removal was the law of the case, stating that it did not agree with the federal judge's assessment, which had only been made in the context of determining whether 28 U.S.C. § 1441(b) had been satisfied, rather than in the substantive context it was now before the appellate division). Having determined that it lacks jurisdiction, this Court does not decide that issue.

[12] Metro Corp. argues that if the Court first considers its motion to dismiss for lack of personal jurisdiction, the Court will not need to determine the issue of fraudulent misjoinder. See Ruhrgas, 526 U.S. at 587-88 (finding that "in most instances subject-matter jurisdiction will involve no arduous inquiry," and "in such cases, both expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of that issue first," but where "a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction"). This Court declines Metro Corp.'s invitation, as it views the subject

The remaining issue is whether Plaintiff is entitled to attorney's fees and costs arising from Metro Corp.'s unavailing removal.  Under the removal statute, "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."  Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

## CONCLUSION

For the reasons expressed above, Plaintiff's motion to remand the matter to state court will be granted.  While the Court considers it a close question it cannot say there was no reasonable basis to seek removal.  Plaintiff's request for attorney's fees and costs will therefore be denied.  Metro Corp.'s motion to dismiss will be denied as moot.  An appropriate Order will be entered.


Date:   June 27, 2019              s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

---

matter jurisdiction issue to be straightforward.